BRYANT *et al.* v. BARNES, TAX COLLECTOR.*

.(Division B. Nov. 16, 1925. Suggestion of Error overruled

March 14, 1927.)

[106 So. 113. No. 25286.]

1. STATUTORY PROVISIONS.

Under the laws of this state (chapter 184, Laws 1916 [Hemingway's Code, section 7334]), the whole territory of the county is. laid off into separate school districts for the white and colored races, and a school is maintained in each district for the race for which it

is established, and each race, under the law, has convenient schools for its educable children.

2. SCHOOLS AND SCHOOL DISTRICTS. *Consolidated schools may be established for either white or colored race; carrying on consolidated schools for longer terms than general public schools may be provided for by local taxation, in absence of intentional discrimination between races.*

It is permissible to establish consolidated schools for either race, and, under proper classification, to provide for the carrying on of the consolidated schools for longer terms than the general public school terms by local taxation upon the property of the district, so long as there is no intentional discrimination between the races.

3. CIVIL RIGHTS. *Creating colored school district from territory in consolidated school district for white race held not discrimination between races.*

Where the county established a consolidated school district for the white race, and levied an extra tax of ten mills on the property in such district to extend the term of the consolidated school for the white race, and on application of the citizens of the colored race created a colored school district from a territory embraced in the district for the white race, and levied thereon a ten-mill tax for the colored school district, there is no discrimination between the races, although no white people of school age live in the territory constituting the colored school district.

4. CIVIL RIGHTS. *Showing as to discrimination between races required.*

The courts will see that no discrimination is practiced in the administration of the law between persons of different races; but before the courts can act with reference thereto the bill must state a proper case showing that they have made proper application to the administrative officers for the allowance of equal rights and facilities, and that the conditions are substantially similar.

*Headnotes 1. Schools and School Districts, 35 Cyc, p. 819; 2. Schools and School Districts, 35 Cyc, pp. 818, 819; 3. Civil Rights, 11 C. J., section 12; 4. Civil Rights, 11 C. J., section 29.

APPEAL from chancery court of Covington county.
HON. T. P. DALE, Chancellor.

Suit by F. B. Bryant and others against W. J. Barnes, Tax Collector, for an injunction. From a judgment sustaining a demurrer and dismissing complainant's bill, complainants appeal. Affirmed.

*W. U. Corley,* for appellants.

Appellants maintain in this cause, that they are doubly taxed for the same purpose; that they are forced by operation of the acts of the county school board, the county board of supervisors and the tax-collector to maintain two schools only to receive in return one school. Let it be remembered in presenting this argument that the negroes own all the property, both real and personal within the negro school territory, and that they are forced to pay the levies towards the maintenance of the white school for which they receive no benefit; also to maintain their own school by levies sufficient to do so; that they have exhausted every known method to obtain relief, all of which is charged in the bill and confessed by the demurrer of appellee's.

Article 14 of the Constitution of the United States provides among other things, that "No state shall make or *enforce* any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

It will be noted to begin with, that to admit the constitutionality of the school statute, the word *enforce* means as much as any other portion of the Article. "Shall not *enforce* any law"—that does what? That will abridge the privileges or immunities of any citizen. We maintain that when double taxation is placed upon these negroes, that their privilege is being violated; that their immunities are varied and different from that of the whites; that is, the whites are granted an immunity from taxation that the negroes are not granted.

The supreme court of the United States has held that our Bill of Rights was intended to secure the individual from the arbitrary exercise of even the very powers of Government which the people conferred upon the Government. *Bank of Columbia* v. *Okley,* 4 Wheat 244, 4 L. Ed. 559. See, also, *People* v. *Hurlbut,* 24 Mich. 44, quoting Justice COOLEY.

If all persons are treated alike under the law under the same circumstances, no person can be said to be deprived of the equal protection of the law. *Leeper* v. *Texas,* 139 U. S. 462. It certainly cannot be said these are treated equally.

It was held by this court (not a similar case) that equal protection of laws means subject to equal laws applicable alike to all in the same situation. *Adams* v. *Standard Oil Company,* 97 Miss. 879. The territory here within the negro school is owned exclusively by that race, while the remainder of the white school district is owned by whites, hence a difference of taxation under the same circumstances, and we submit this is violative of the Fourteenth Amendment.

In *McFarland* v. *Goins,* 96 Miss. 67, it was decided by this court that an agricultural school could not be established under the Act to the exclusion of the negroes, because the whites were provided a school at the expense of the negro in part, and again, it denied the negro the right of the whites, hence it is violative of the Constitution. As is also the act of the board here in forcing two levies and burdens of tax upon these negroes, in order to maintain a single school for themselves.

Equality before the law means that all people shall have equal rights and burdens. Where the accommodations or privileges granted the colored race are equal to those granted the white race there is no denial of equal protection of the law. 8 Cyc. 1074. We submit that their privileges are not equal, their rights are not equal under the same circumstances, hence, the injunction in this cause should be made perpetual.

"Any system of taxation for school purposes which discriminates, with respect to race or color, as to the class upon or for the purpose for which the tax is imposed, or as to the application of the fund thereby raised is unconstitutional and void." 7 Cyc. 168, citing *Marshall* v. *Donovan*, 10 Bush (Ky.) 681; *Markman* v. *Manning*, 96 N. C. 132; *Pruitt* v. *Gaston County*, 94 N. C. 709; *Davenport* v. *Cloverport*, 72 Fed. 689; *Claybrook* v. *Owensboro*, 16 Fed. 297.

An order taxing whites for white schools only, and an order taxing negroes only, where there is a general mixture of citizenship and ownership of property, and where negro children are debarred from the school, is violative of the inhibition of the Federal Constitution; so a tax for whites and a tax for negroes, where the whites get the better of the advantage in a longer term, and the negroes are precluded from the same term, same expense and same rights is also prohibitive. *Dawson* v. *Lee*, 83 Ky. 49; *Claybrook* v. *Owensboro*, 23 Fed. 634.

Again, since the adoption of the Fourteenth Amendment equal protection must be given to all for schools; they must make equal provision for all irrespective of age, or race or color. 7 Cyc. 166 and 167, and authorities cited thereunder.

A tax cannot be imposed exclusively on any district or subdivision to pay the claim or indebtedness not peculiarly the debt of such subdivision, or raise money for any purpose not peculiarly for the benefit of such subdivision; but there may be a special or local taxation for the special or local purposes of a public character and beneficial to the community which pays the tax. 37 Cyc. 733. We maintain that this is a special tax for the benefit of another subdivision, and therefore contrary to the intent and purpose of our Constitution. *Farris* v. *Danier*, 42 N. W. 31; *State* v. *Merchants Ins. Co.*, 12 La. Anno. 802; *Taylor* v. *Chandler*, 24 Am. R. 308.

Taxation of one locality for the benefit of another locality is strictly prohibited, for equality in taxation is accomplished when the burden of the tax falls equally and *impartially* upon all the persons and property subject to it.  37 Cyc. 735; *Norris* v. *Waco,* 57 Tex. 635; *People* v. *Whyler,* 41 Cal. 351.

Persons discriminated against have a recourse and where discrimination exists, the assessment, or levy is void.  37 Cyc. 737, and authorities cited thereunder.  This levy is void either from lack of uniformity or misconduct of the officers, or those in charge of the administrative department, and if the administrative officers in this case unlawfully collect, or cause to be collected a double tax, the levy is void.  *Dundee Mortgage Company* v. *School District,* 21 Fed. 151.

A special tax cannot be imposed upon a particular township for the benefit of the whole county.  *Jackson County* v. *State,* 58 N. E. 1037; then if this cannot be done, how can one school district be taxed for the benefit of another district, even though it be included within it, and derives no benefit from it in any way.

Double taxation should be avoided not only in not taxing the same property twice in the same year, for the same purpose, but also in not taxing the same thing twice whatever its form.  117 S. W. 398.  The question of immunities and privileges is discussed at length by Judge TAFT in the case of *Truax* v. *Corrigan,* 42 Supreme Court Reporter, 124.

Section 207, Mississippi Constitution, provides that separate schools shall be maintained for the children of the white and colored races.  Can they do so, by taxing the negro to maintain a white school and not tax the white race to maintain a negro school?  We submit the authorities, or even the sections of parts of the Constitution cited and quoted are sufficient.

The remedy by injunction is the only remedy available for a condition as it here exists and the action taken by

the court below should be reversed, for a special tax, it is true, may be levied on a special district for local purposes, but such local tax cannot exclude from its benefits any person on whom it falls. 12 R. C. L. 1153, citing *Risley* v. *Utica,* 168 Fed. 737; *Atchison* v. *Clark,* 60 Kan. 826.

This levy was a special tax for local purposes, and its operation excludes from its benefits the taxpayers in the negro district, since all of this ten mill tax levy is placed to the credit of the white school.

*H. M. McIntosh,* for appellee.

The territory embraced in the Hopewell separate school district for negroes, overlaps and embraces a portion of the territory included in the Calhoun consolidated school district, and it is alleged in complainant's bill that negroes, including complainant, own all the land and property in that part of the Hopewell separate school district created for negroes, that is included in the Calhoun consolidated district for white people.

The supreme court, in *Trustees of Walton School et al.* v. *Board of Supervisors of Covington County,* 75 So. 833, in passing upon the school law of the state of Mississippi, said: "The act is not in conflict with the state or Federal Constitution because under the law the board has the same power to create consolidated schools for the colored race that it has for the white race."

The necessity and desirability, and the demand for a consolidated school for either the white or the colored race, is not a matter to be passed upon by this court in the trial of this cause, as that has not been brought into question.

It seems to be the contention of the appellant that because of the fact that all of the real and personal property of a given district, as is alleged in this case, is owned by one race, that this particular tract could not be legally

included in a separate school district for another race. If this were true, the law authorizing the creation of a separate school district might be unconstitutional one day and constitutional the next, and *vice-versa,* its constitutionality depending upon the acts and investments of the citizenship.

Appellee respectfully submits that the decree of the lower court was correct in sustaining the demurrer, and that this case should be affirmed.

*W. U. Corley,* in reply for appellants. ·

It is not the contention of appellant here, that the law is unconstitutional in this case. The law, or Constitution is all right, and we are not complaining at the law, but we are complaining about the orders of executive boards in carrying out this law. We contend that an order of an executive board can be as unconstitutional, as an act of the legislature can be unconstitutional. We contend that the orders in this case are unconstitutional, wherein they undertake to enforce an order for the negroes to support the white school. It stands on the same principle as if the legislature had passed an act, requiring both schools to be maintained just as they are maintained. This court, in the light of the Walton case, would be compelled to reverse this case. Then if that is true as to a legislative act it is also true as to an executive body in acting under a valid statute. We have already cited authorities that the acts of executive bodies may be unconstitutional.

Any discrimination makes a statute void. 11 C. J. 806. If this is true, as to a statute, then why is it not true as to the operation of a statute. If we are in error, then it could be possible for the school board, and board of supervisors to cause all the negroes in the county to be taxed to support the white schools.

There are other arguments necessary to enter here in reply to counsel. We have here a host of negroes paying a tax, and for this tax, they receive no benefit; also they receive no voice in the disposition of their taxes. It is taxation without representation. It is taxes paid by taxpayers, that have no voice in the disposition of it. It is taxes paid where the taxpayer receives no benefit, and it is taxes paid by one race strictly for the benefit of another race.

Etheridge, J., delivered the opinion of the court.

The appellants, as trustees for a school for the colored race, and as individual property owners of the school district of which they were trustees, and in which district their property was situated, brought this suit to enjoin the collection of taxes upon the property of such district and all other property situated therein levied for the support of a white consolidated public school. They alleged: That on the 15th day of July, 1912, the county school board of Covington county, Miss., created a school district for white children known as the Calhoun consolidated school district, which order is recorded in the minutes of the school board. That the said district includes the real and personal holdings of the complainants, and that they are individually and collectively assessed to pay such taxes or lose their property. They further allege that on the 12th day of June, 1922, the complainants, individually and collectively, with many other citizens of said county and state, appeared before the county school board for the purpose of creating a district for the colored children. They further allege that the territory embraced in the petition for the colored school was then owned and is now owned exclusively by colored people and embraces a sufficient territory to create a district for school purposes; that on the filing of said petition the county school board in acting thereon granted

the petition, which order is shown on the minutes of such school board. It is further alleged that the colored school district is embraced within the Calhoun consolidated school district, and that the board of supervisors, at its meeting in November, 1924, undertook to levy ten mills on the real and personal holdings of all taxpayers and property owners living within the Calhoun consolidated school district, which levy includes complainants' property, real and personal, and for which and on which levy said Calhoun consolidated school district is maintained, and which will cost complainants the sum of one hundred dollars or thereabouts, and that said charge is unlawful.

Complainants further charge that the board of supervisors at said meeting levied a ten-mill tax for the maintenance of the colored district school, which tax was levied against the real and personal property of the complainants. It is then alleged that the colored school is for the most part within the territory comprising the Calhoun consolidated school district, and that complainants' property, real and personal, is within both districts, and that complainants' property is within both separate school districts and taxed for the support and maintenance of both schools.

It is further alleged that there are no white children or white patrons within the colored school district to get any benefit therefrom, and that there are no colored children or patrons of colored schools receiving any benefit from the Calhoun consolidated school; that the patrons of the colored school district own all the property, both real and personal, within the colored school district, and that no white person contributes towards its support in any manner whatever.

It is further alleged that the taxpayers and property owners of the Calhoun consolidated school district that are white do not own all of the property in said district, and that property in said district not owned by the white

people is owned by colored people, and that such ownership covers the territory and all of it within the colored school district.

Complainants further allege that several hundred dollars have been paid into the treasury of the Calhoun consolidated school by the taxpayers and patrons of the colored school for which they receive no benefit, and that they are thereby subjected to double taxation; that by reason thereof they are being forced to maintain in full the colored school by a taxation of ten mills, and in addition thereto are forced and compelled to contribute to the support and maintenance of the Calhoun consolidated school district, and that each and every taxpayer in the colored school district is forced to assist and aid in the maintenance of the Calhoun consolidated school district to the amount of ten mills on all of their property holdings, for which they receive no benefits.

It is further alleged that it is not necessary to have the territory of the colored school district within the Calhoun consolidated school district in order to maintain same, and that it is not done except for the purpose of making the negro property owners maintain the school of the whites without compensation; that said Calhoun consolidated school district has sufficient property and territory to maintain its school without the territory embraced in the colored school district.

Complainants further allege that it is impossible under the present conditions to get all of the territory within the consolidated school district within the territory of the colored school district so that taxation would be equal and fair. It is further alleged that complainants have requested the defendants to divide the moneys paid into white consolidated school district with the colored school district, which request has been declined; that complainants then asked for a separation of the territory, and this also had been denied. It is then alleged that unless restrained the tax collector will distrain and sell com-

plainants' property for the payment of taxes unless they shall pay said tax.'

It is then alleged that said system of taxation, the laying off of the school districts, the making of levies, and the collection of taxes under such conditions are unconstitutional, in that such taxation is taxation without representation, the taking of complainants' property without due process of law, and is the taking of private property for public use, without compensation, in volation of article 8 of the Constitution of the United States, and of article 5 of the amendments to said Constitution, and in violation of the Fourteenth Amendment to the Constitution of the United States, and contrary to sections 17 and 112 of the Constitution of the state of Mississippi. The bill was demurred to, the demurrer sustained, and the bill dismissed.

By section 7334, Hemingway's Code (Laws of 1916, chapter 184), it is provided that separate school districts shall be made for the white and colored races, and the districts for each race shall embrace the whole territory of the county outside of the separate school district, and provides that a school district shall contain not less than forty-five educable children of the race for which the district is established, except where too great distance or impassable obstructions would debar children from school privilege, in which case the school board may establish a regular district containing not less than fifteen educable children. And it is provided that, in places where swamps, large streams, or other bodies of water or marsh, not crossed by foot bridges, render it impracticable to establish regular districts, the school board may establish special districts for such children as live therein. A careful reading of this statute shows that the whole territory of the county is to be divided into school districts for the white race, and is then to be divided separately for school districts for the colored race, and that a school must be established for each race so that every

child of educable age may have public school privileges within a convenient distance. Inasmuch as the two races tend to live separately and are separately grouped, and inasmuch as the school building is to be located for each race with reference to this grouping, having in view the convenience of the majority of the patrons of the school, it rarely happens that a white school district and a colored school district occupy precisely the same territory, but every acre of land in the county is in a white school district and is also in a colored school district, although the boundaries of such districts are generally different. Every child is situated in a school district, and is entitled to attend the public schools if it is within the ages between five and twenty-one years.

By chapter 92 Hemingway's Code, and the amendments thereto, consolidated schools are provided for. By section 3999, Hemingway's Code (Laws of 1910, chapter 124), it is provided that, where more than four schools are consolidated into one, the salary of two teachers of the consolidated schools may be expended in the transportation of pupils.

By section 4000, Hemingway's Code (Laws of 1916, chapter 180), it is provided that, where two or more schools are consolidated into one school, that the board of public school trustees, together with the county superintendent, are authorized to provide means of transportation of pupils living two miles or more from the consolidated school building, under rules and regulations to be prescribed by the state board of education. By section 4001, Hemingway's Code (Laws of 1916, chapter 180), the expense of such transportation is provided for. By section 4002, Hemingway's Code (Laws of 1916, chapter 180), a tax levy for such consolidated school district is provided for under the conditions and for the purposes therein named. By section 4003, Hemingway's Code (Laws of 1916, chapter 180), a consolidated school district, created under the preceding section, has all the

privileges granted to separate school districts, and may make its school a graded school. By other sections bond issues are provided for.

These sections providing for consolidated schools are not restricted to the white race, but are applicable to the colored race as well. In other words, the same powers, rights, and duties exist regardless of the race for which the school is or may be established. The extra levy is made for the purpose of supporting the given school. The consolidated school district is not different from an ordinary school district. In other words, it is nothing but a common school district, but when it attains a certain population, or a certain number of square miles, or a certain property value, it may have certain privileges somewhat different from the ordinary school; but there is nothing to prevent any other district from having a school under the same circumstances and conditions, or for the members of the other race to have the same advantages under the same conditions.

By section 7360, Hemingway's Code (Laws of 1916, chapter 186), it is provided that children may attend the school of the separate school district and the county to pay the amounts therein referred to. By section 7361, Hemingway's Code (Laws of 1916, chapter 186), outside territory may be added to a separate school district. By section 7356, Hemingway's Code (Laws of 1914, chapter 197), it is provided that the board of supervisors of any county is authorized to issue bonds of a supervisor's district, or a school district containing not less than sixteen square miles, excluding the territory embraced in a separate school district, for the purpose of erecting, repairing, and equipping school buildings for the county, a supervisor's district, or a school district as the case may be.

By section 7357, Hemingway's Code (Laws of 1914, chapter 197), a bond issue may be had by any school district having sixteen square miles or more territory, not to exceed five per cent. of the assessed value of the prop-

erty in the district of the territory. By section 7358, Hemingway's Code (Laws of 1914, chapter 197), on the petition of a majority of the qualified electors for the public school district in a county, the board of supervisors shall levy a tax on the property of that district to provide fuel and other incidental expenses of the school.

By section 7363, Hemingway's Code (Laws of 1916, chapter 186), municipal separate school districts are provided for. By section 7364, Hemingway's Code (Laws of 1916, chapter 186), rural separate school districts are provided for.

By section 7368, Hemingway's Code (Laws of 1914, chapter 195), school districts lying in two or more counties are provided for, and a separate district may make its schools graded schools under the provisions of section 7370, Hemingway's Code (section 4535, Code of 1906). By section 7353, Hemingway's Code (Laws of 1914, chapter 189), in a separate school district containing not less than twelve square miles, on the petition of a majority of the qualified electors of such district, the board of supervisors may levy a tax on the property of the district for the purpose of supplementing the salaries of the teachers of the district, or for extending the school term thereof, or for both purposes.

These sections show that, except in cases of special school districts, created to meet small territorial areas inaccessible to other public schools, a tax may be levied on the property of the district either to extend the term of the school or to increase the salary of the teachers. It is of course not necessary that every child in the county have the same advantages in the way of education that every other child has. Children living in municipalities usually have better schools than children living in remote and sparsely settled territory, and this has never been considered as being an infringement of the constitutional right of such child or children.

Taxing districts may be created for public purposes, depending upon reasonable conditions, and every person is not entitled to have equal advantages provided for him. If he lives in the territory of the district he has the rights given to such district, or that flow to the public from it. The operation and conduct of the public schools are practical affairs. You cannot discriminate against people on account of their race or condition, but their rights may depend upon their situation, or they may be classified according to such situation and condition. The bill here involved does not make an unconstitutional discrimination. In fact, the county here levied the same tax rate on the property in the colored school district that it levied for the white consolidated school district. The petitioners procured from the county the territory which they desired to have embraced in their school district incorporated therein. They were given an extra tax levy at the same rate that the white consolidated school received, and while it so happened that all of the property in the colored district at the time of the creation of the said district was owned by colored people exclusively, yet that situation was accidental and might be changed at any moment by a conveyance of any property therein situated to a white person, who then would be required to pay exactly the same tax that the colored person paid. If all of the property embraced in the district changed hands and passed into the ownership of white people, such white people would pay the same tax that the colored people would pay it, and such tax would be used exclusively for the education of the colored children. The property may be owned largely or even entirely by a corporation, and the same result would follow. The corporation would pay the tax at the same rate the colored people now pay it, and such tax would go to the support of the colored school in the colored school district without any division of the funds between the schools of the two races. It is permissible to support a colored school

by a special levy upon all of the property within the colored school district, and such funds may lawfully go to the sole support of the colored school. The school districts of the two races may occupy the same areas or may occupy different territory in part, and part in common. But every acre of land in the state is subject to taxation for the support of the white schools, and to taxation for the support of the colored schools. The districts for the two races do not require the members of one race to support the schools only of that one race. Every child, no matter of what race, must be educated at the public expense to the extent that the law provides for such education. It would be wholly impracticable, in view of the situation above referred to, to make the territorial limits of each school district of the white race coextensive and coterminous with that of the colored race. There may be school districts in which no member of one race lives, as appears to be the case in this case with reference to the colored schools. There may be districts in which only white people live, and if this territorial area comes within the conditions authorizing the establshment and support of consoldated schools it is entitled thereto.

The petitioners in the present case did not ask for their district to occupy the same territory that the white district occupies. It did not seem to be their wish to do so, and they seemed to recognize the impracticability of establishing such a district. They labor under a delusion as to receiving no benefit from the operation of a white school. If there is any virtue in education everybody is benefited by it. Corporations are taxed to support schools, though of course they have no children to educate and the owners of the stock of such corporations may not even live in the state in which their property is taxed.

The public authorities owe the same duties under the law to the colored race that they owe to the white race in administering the public affairs, and the law does not permit discrimination, and no doubt the courts will see

that such discrimination is not practiced whenever a proper case is presented showing such discrimination. However, this does not require that every child in the county shall attend a consolidated school, or a high school, or a college. Practical classification is permissible and is necessary, else every part of the state would be tied down to the level of the most backward part of such state.

The judgment of the court below will therefore be affirmed.

*Affirmed.*